■ WAYNE R. WARNER JR., Appellant, v NEW YORK CENTRAL MUTUAL FIRE INSURANCE COMPANY, Respondent. [949 NYS2d 276]——

---

Garry, J.

In January 2004, plaintiff was injured in a two-car accident in the Town of Mohawk, Montgomery County. Plaintiff subsequently commenced a personal injury action against the operator of the other vehicle (hereinafter the tortfeasor) and notified defendant, as his insurer, that he would be claiming supplemental uninsured/underinsured motorist (hereinafter SUM) coverage. The parties thereafter exchanged correspondence, information, and documents. In February 2006, shortly after speaking by telephone with an associate liability examiner employed by defendant, plaintiff's counsel sent a letter to defendant advising that the policy limit had not yet been offered, that trial was scheduled to commence in March 2006 and that "there [was] a possibility that the case [would] be arbitrated instead." This correspondence further confirmed the phone conversation, stating that the examiner had advised that "regardless of whether the [tortfeasor's] $25,000 policy limit is paid as a result of settlement, trial or arbitration, there would be no effect on [plaintiff's] right to pursue his SUM claim." Defendant did not respond to this letter.

Shortly thereafter, plaintiff and the tortfeasor agreed to determine the amount of plaintiff's claim through a high/low arbitration procedure, by which plaintiff would receive at least $7,500 regardless of the arbitrator's decision and, if the arbitrator found that the case was worth at least $25,000, the tortfeasor's carrier would tender the policy limit. In April 2006, the arbitrator determined that the claim was worth "in excess of $25,000," without specifying the amount. On May 2, 2006, plaintiff advised defendant in writing of this decision, and requested defendant's consent to settlement of plaintiff's claim for the full amount of the tortfeasor's policy. On May 25, 2006, defendant disclaimed coverage on the ground that plaintiff had violated the policy terms by entering into arbitration without defendant's written consent and by compromising defendant's subrogation rights. On June 19, 2006, plaintiff executed a general release settling the claim against the tortfeasor. Plaintiff thereafter commenced this action against defendant seeking a declaration that defendant is obligated to provide SUM cover-

age. After joinder of issue, plaintiff moved and defendant cross-moved for summary judgment. Supreme Court denied plaintiff's motion and granted defendant's cross motion. Plaintiff appeals.

An insured who settles with a tortfeasor without the SUM insurer's written consent or otherwise prejudices the insurer's subrogation rights forfeits SUM benefits, unless the insured shows that the insurer waived this requirement or acquiesced in the settlement (*see Matter of Central Mut. Ins. Co. [Bemiss]*, 12 NY3d 648, 659 [2009]; *New York Cent. Mut. Fire Ins. Co. v Danaher*, 290 AD2d 783, 784-785 [2002]). A condition of plaintiff's policy provides that if a claim against a negligent party is settled for the available limits of the party's policy, a "release may be executed with such party after [30] calendar days actual written notice [to defendant], unless within this time period [defendant] agree[s] to advance such settlement amounts to the insured in return for the cooperation of the insured in [defendant's] lawsuit on behalf of the insured." The policy further provides that "[the] insured shall not otherwise settle with any negligent party, without our written consent, such that our rights would be impaired," and prohibits the insured from prejudicing defendant's subrogation rights, except as set forth above. These provisions mirror the language of the SUM endorsements mandated by the regulations governing such coverage set out in 11 NYCRR subpart 60-2, commonly referred to as Regulation 35-D (*see* 11 NYCRR 60-2.3 [f], conditions 10, 13; *Matter of Central Mut. Ins. Co. [Bemiss]*, 12 NY3d at 652, 656-658).

Upon the record presented, issues of fact preclude summary judgment for either party. Although defendant argued that plaintiff entered "binding" arbitration, it is unclear whether plaintiff was in fact bound to accept the policy offer from the tortfeasor and, if plaintiff was not so bound, then the arbitration proceeding did not impair, or even affect, defendant's subrogation rights. Plaintiff alleges that his oral agreement with the tortfeasor would have guaranteed him an award of at least $7,500, but if the arbitrator found the value was in excess of the $25,000 policy limit, "he would just so state, and not assign a specific monetary value." In that event, the "full extent" of the agreement was that the tortfeasor would be obligated to tender the policy (*compare Matter of State Farm Mut. Auto. Ins. Co. [Perez]*, 94 AD3d 1314, 1315-1316 [2012]). Upon receiving the policy limit offer, plaintiff duly notified defendant, as required. If in fact defendant's rights were fully preserved at that point then, in accord with the policy terms, defendant could have advanced the proposed settlement funds to plaintiff and

stepped into the litigation, requiring plaintiff's cooperation in the pending claim (*see Matter of New York Cent. Mut. Fire Ins. Co. v Reinhardt*, 27 AD3d 751, 752 [2006]).* In that case, we discern no reason why the parties' obligations under the SUM policy should be altered merely because the policy limits were tendered as the result of an arbitration proceeding, rather than through negotiation. However, the record is devoid of any testimony from the tortfeasor or his counsel supporting or confirming this understanding of the oral agreement. In the absence of such proof, we find a material issue of fact as to whether plaintiff preserved defendant's right to proceed with the litigation.

There is a further factual issue as to whether defendant should be estopped from disclaiming coverage based upon its alleged representations and acquiescence to plaintiff regarding participation in the arbitration (*compare McEachron v State Farm Ins. Co.*, 7 AD3d 929, 930 [2004]; *Matter of New York Cent. Mut. Fire Ins. Co. [Cavanagh]*, 265 AD2d 787, 788 [1999], *lv denied* 94 NY2d 760 [2000]). Plaintiff met his initial burden on this issue with the detailed affidavit of his attorney setting forth the representations allegedly made by an employee of defendant, together with the attorney's contemporaneous letter confirming the discussion, as set forth above. Defendant's submission of an affidavit by this employee denying that consent was ever given presents a factual dispute.

These conclusions make it unnecessary to address the parties' remaining contentions.

Peters, P.J., Rose, Lahtinen and Malone Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant's cross motion for summary judgment dismissing the complaint; cross motion denied; and, as so modified, affirmed.

---

* If defendant's rights were fully protected at the time plaintiff formally notified defendant of the policy limits offer, then execution of the general release more than 30 days later was also proper; following passage of the requisite time period, plaintiff was free to execute the release without safeguarding defendant's subrogation rights, and he would not forfeit SUM benefits by doing so (*see* 11 NYCRR 60-2.3 [f]; *Matter of Central Mut. Ins. Co. [Bemiss]*, 12 NY3d at 659; *compare Day v One Beacon Ins.*, 96 AD3d 1678 [2012]).